UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| GILBERT EDWIN | CIVIL ACTION NO.  2:18-0385 |
| VERSUS | CHIEF JUDGE S. MAURICE HICKS, JR. |
| CLEAN HARBORS ENVIRONMENTAL SERVICES INC. | MAGISTRATE JUDGE KAY |

**MEMORANDUM RULING**

Presently before the Court is Defendant's Motion for Reconsideration regarding the Court's previous order on the Motion for Summary Judgment.  Rec. Doc. 122.  The Defendant asks that the Court reconsider its previous ruling denying the Motion for Summary Judgment regarding Plaintiff's Title VII retaliation claim.  This Motion was opposed by the Plaintiff.  Rec. Doc. 126.  For the following reasons, the Motion is **GRANTED.**

**I.      Procedural and Factual Background**

The Plaintiff in this case, Mr. Gilbert Edwin, sued his former employer Clean Harbors Environmental Services Inc. ("Clean Harbors"), alleging claims of racial discrimination and retaliation.  Rec. Doc. 42.  Clean Harbors subsequently moved for summary judgment on all claims.  Rec. Doc. 71.  After reviewing the record, the Court granted summary judgment on most of Mr. Edwin's claims but denied summary judgment on Mr. Edwin's Title VII retaliation claim.  Rec. Doc. 116.

Regarding this Title VII retaliation claim, the Court ruled that Mr. Edwin had made his *prima facie* case for retaliation because Mr. Edwin had filed an EEOC claim, was subsequently fired, and because Clean Harbors had seemingly been notified by the

EEOC of the investigation.  Id. at 10.  The Court further held that there was an issue of material fact regarding the company policies which could lead a reasonable jury to find that the decision to fire Mr. Edwin was pretextual.  Id. at 11-12.  It is this ruling that Clean Harbors is asking the Court to reconsider.

## II.   Legal Standard

While the Federal Rules of Civil Procedure do not explicitly recognize a motion for reconsideration, such motions are generally reviewed under Federal Rule of Civil Procedure 54(b).  Rule 54(b) allows a court to "reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."  Melancon v. Texaco, Inc., 659 F.2d 551, 553 (5th Cir. 1981).  Generally, the Courts treat such motions in a similar fashion as Rule 59(e) motions to alter or amend the judgment, although the "standards for granting reconsideration under Rule 54(b) are somewhat looser than those under Rule 59(e)."  Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp., 259 F.Supp.2d 471, 475 (M.D.La. 2002); see also HBM Interests, LLC v. Chesapeake La., *LP*, 2013 WL 3893989 at *1 (W.D.La. 2013).  These types of motions are generally meant to "serve the narrow purpose of allowing a party 'to correct manifest errors of law or fact or to present newly discovered evidence.'"  Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989) (quoting Keene Corp. v. Int'l Fidelity Insurance. Co., 561 F.Supp. 656, 665 (N.D.Ill. 1982)).

## III.   Application

### a. *Prima Facie* case

Here, Clean Harbors is asking the Court to reconsider, arguing that it made errors in its analysis of the record regarding both the *prima facie* case of the Title VII retaliation

claim as well as the issue of pretext. The Court will first analyze the issue regarding Mr. Edwin's *prima facie* case of Title VII retaliation.

To establish a *prima facie* case of retaliation under Title VII, the Plaintiff must show that "(i) he engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link between the protected activity and the adverse employment action." Hernandez v. Yellow Transportation, Inc., 670 F.3d 644 (5th Cir. 2012). Regarding the causal link, "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." Swanson v. General Services Admin., 110 F.3d 1180, 1188 (5th Cir. 1997) (citing Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993).

In the present matter, the first two prongs were not disputed. Mr. Edwin had filed a report with the EEOC and was subsequently fired. This Court previously held that there were enough facts to establish the third prong regarding causation because the record seemed to indicate that Clean Harbors had been sent a letter from the EEOC approximately one month prior to Mr. Edwin's termination. See Rec. Doc. 116 at 10; Rec. Doc. 71-2, Exhibit 18 at CH0010-0011. In its Motion for Reconsideration, however, Defendant has shown that this Notice from the EEOC was not received. Rec. Doc. 122-1 at 2-3. Rather, it appears that the EEOC Notice was sent to an incorrect email address on December 19, 2017 and was not resent thereafter. Rec. Doc. 71-2, Exhibit 18 at CH0024. Clean Harbors has also demonstrated the reason the email was not received, as the email address used by the EEOC in sending the Notice contained a typo. Compare Rec. Doc. 71-2, Exhibit 18 at CH0024 with Rec. Doc. 71-2, Exhibit 10 at

CH0252 (demonstrating that the email used by the EEOC was wrong).  It is thus apparent that Clean Harbors would not have had knowledge of Mr. Edwin's EEOC filing through the EEOC Notice as that email was not delivered.

A further review of the record demonstrates that without this basis, it is unclear whether Clean Harbors had any knowledge that Mr. Edwin had filed an EEOC claim prior to his termination.  Mr. Edwin first personally informed Clean Harbors of his EEOC complaint at the time he was being terminated.  See Rec. Doc. Rec. Doc. 99-10, page 286; Rec. Doc. 99-7, pages 189-193.  However, by this time the decision to terminate Mr. Edwin had already been finalized for his failure to comply with the company's drug policy. Rec. Doc. 71-2, Exhibit 16 at CH0623.  Thus, any knowledge stemming from Mr. Edwin himself would not establish a *prima facie* case of retaliation.  Factual issues remain, however, as to whether Clean Harbors had notice of the EEOC complaint through the right to sue notification.  In her deposition, Barbara Ward, Clean Harbors' Human Resources Director, initially stated that she had received the right to sue notification from the EEOC on December 21, 2017.  Rec. Doc. 105-4, p. 83, lines 17-25.  However, later in her deposition, Ms. Ward noted that the right to sue notification had been sent to the wrong address and had been faxed to her "sometime in January."  Id., p. 173-174.  This right to sue notification shows that Mr. Edwin had filed some claim with the EEOC although it did not include any details of the charge or investigation.  Rec. Doc. 71-2, Exhibit 18 at CH0013-0014.  Thus, there remains some factual dispute as to when Clean Harbors received this right to sue notification, although it appears that they received it sometime during the month prior to Mr. Edwin's termination.  Because close proximal

4

timing can by itself establish a *prima facie* case of retaliation, the Court finds that summary judgment remains inappropriate as to the *prima facie* case.

### b. Evidence of Pretext

In a retaliation case, if the plaintiff can establish their *prima facie* case of retaliation, then the burden shifts to the defendant "to proffer a legitimate, non-retaliatory reason for…[the] termination." Musser v. Paul Quinn College, 944 F.3d 557, 561 (5th Cir. 2019). If the defendant can do so, then the burden shifts back to the plaintiff who must then show that the employer's reason is a mere pretext, which requires a "showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." Feist v. La. Dep't of Justice, Office of Att'y General, 730 F.3d 450, 454 (5th Cir. 2013) (citing Univ. of Texas Southwestern Med. Center v. Nassar, 570 U.S. 338, 360-61 (2013)). To meet this but for showing, the plaintiff must "show that there is a 'conflict in substantial evidence' on this ultimate issue." Musser, 944 F.3d at 561 (quoting Hernandez, 670 F.3d at 658). This standard can be met by showing evidence such as "disparate treatment, or that her employer's explanation is unworthy of credence." Brown v. Wal-Mart Stores East, L.P., 969 F.3d 571, 577 (5th Cir. 2020) (quoting Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll., 719 F.3d 356, 363 (5th Cir. 2013)). Further, evidence that a company failed to follow their policies may also be used in establishing pretext. See Smith v. Xerox Corp., 371 F.App'x 514, 520 (5th Cir. 2010) (citing the question of "whether the employer followed its typical policy and procedures in terminating the employee" as one "indicia of causation").

Here, Clean Harbors has demonstrated a legitimate, non-retaliatory reason for firing Mr. Edwin. As Mr. Edwin sought to come back to work, he tested positive for

5

marijuana. Rec. Doc. 71-2, Exhibit 15 at CH0052; Rec. Doc. 71-2, Exhibit 13 at CH 0254. While Mr. Edwin has referred to this as medical marijuana, it is undisputed that it was not prescribed by a doctor. Rec. Doc. 98-1, Exhibit 31 at CH0402 (a doctor's letter noting that the doctor was not authorized to prescribe medical marijuana); Rec. Doc. 71-2, Exhibit 11, ¶6. Clean Harbors has a policy which "strictly prohibits the possession, use…of illicit drugs or other intoxicants." Rec. Doc. 71-2, Exhibit 2 at CH0064. Further, any employee returning from a leave of absence could be required to take a drug test. Rec. Doc. 71-2, Exhibit 3 at CH0163. Violation of the policy could result in discipline "up to and including termination for cause." Id. at CH0170. Thus, Clean Harbors has met their burden of showing a valid reason for firing Mr. Edwin, which shifts the burden to Mr. Edwin to establish pretext.

In its original ruling, the Court held that certain Clean Harbors policies seemed to provide Clean Harbors with enough discretion that they could have chosen not to fire Mr. Edwin. Rec. Doc. 116, p. 11-12. Clean Harbors now asks the Court to reconsider that position for two reasons, first that the Court failed to consider how Mr. Edwin's safety-sensitive position impacted their decision to terminate and, second, that Mr. Edwin would not technically meet the policy requirements. The Court will consider each argument in turn.

Clean Harbors first argues that it was policy to fire any employees in safety-sensitive positions who failed a drug screening. The Court notes that this issue was not initially raised in the Motion for Summary Judgment but that Clean Harbors feels that this is now relevant in light of the Court's previous ruling. In her deposition testimony, Ms. Ward repeatedly indicates that it was Clean Harbors' policy to terminate any "employee

6

[who] tests positive in a safety-sensitive position for drugs" and that this was true regardless of "whether he was a good performer, a poor performer, [or] the greatest employee…". Rec. Doc. 105-4, p. 65, lines 5-22. See also Id., p. 69, lines 16-20; Id., p. 179, lines 1-3 (stating that when there was a positive test "[i]n a safety-sensitive position, [that she] had no examples of when it did not result in termination"). Mr. Edwin's job was a safety-sensitive position. Id., p. 95, lines 1-8. Mr. Edwin has not shown any evidence that would create a factual dispute on this specific issue, and it would thus appear on reconsideration that Clean Harbors was following their normal drug-related policy regarding safety-sensitive positions.

      Clean Harbors also asks the Court to reconsider whether Mr. Edwin might still be protected by other portions of the company's drug policies. Clean Harbors' policy protects an individual who suffers from "an alcohol or drug dependency" and who "voluntarily come[s] forward to seek the assistance" of one of several experts for that dependency. Rec. Doc. 71-2, Exhibit 3 at CH0169. Notably, Mr. Edwin does not clearly fit this policy as he was not seeking help for dependency, but rather mentioned his drug use as he sought to return to work because he was about to fail his drug test. In its previous ruling, however, the Court had noted that this policy seemed to provide Clean Harbors with some discretion and that they could have chosen not to fire Mr. Edwin. However, this finding no longer appears accurate in light of the additional, undisputed information discussing Clean Harbors' consistent practice regarding positive drug screens for employees in safety-sensitive positions. As such, it would appear that there is no longer a "conflict in substantial evidence" that would show that Clean Harbors stated reason for terminating Mr. Edwin, namely his failed drug test as he sought to return to work, was pretextual.

7

As a final note, Mr. Edwin argues that Clean Harbors failed to meet its policy by investigating if his violation of the Alcohol and Drug Policy was "related to any disability which Clean Harbors [had] a duty to accommodate." Id. at CH0170.  However, it is undisputed that Clean Harbors did, in fact, review this issue, including the doctor's note discussing Mr. Edwin's marijuana usage, but determined that terminating Mr. Edwin remained the correct decision.  Rec. Doc. 105-4, p. 190-191; Rec. Doc. 71-2, Exhibit 17 at CH0078.  Thus, it appears that this policy would not protect Mr. Edwin either.

Ultimately, upon reconsideration, the Court agrees with Clean Harbors that Mr. Edwin has not met his burden of proving that the decision to terminate Mr. Edwin for his violation of the Alcohol and Drug Policy was pretextual.  There are no facts to dispute the contention that Clean Harbors had a consistent internal policy to terminate individuals in safety-sensitive positions who violated the policy.  As such, Mr. Edwin's Title VII retaliation claim should be dismissed.

### IV. Conclusion

As a result of the foregoing analysis, Defendant's Motion for Reconsideration (Rec. Doc. 122) is **GRANTED**.  Therefore, Plaintiff's remaining claim for retaliation under Title VII is **DISMISSED WITH PREJUDICE**.  The instant ruling dismisses Plaintiff's final claim and the case is thus closed.

**IT IS SO ORDERED.**

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, on this 31st day of March, 2022.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT